UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>NEW CENTURY TRS HOLDINGS, INC,:<br>*et al.*<br>        Debtors | CHAPTER 11<br>(Jointly Administered)<br><br>Case No. 07-10416 (KJC) |
| GARY-FORREST: EDWARDS<br>(a/k/a Gary F. Edwards),<br>        Plaintiff,<br><br>v.<br><br>NEW CENTURY MORTGAGE CORP.,<br>LASALLE BANK, N.A.<br>CHASE HOME FINANCE, LLC<br>CODILIS AND ASSOCIATES, P.C.<br>RHONDA PEEK<br>CIRCUIT COURT FOR THE 8TH<br>JUDICIAL CIRCUIT OF THE STATE of<br>ILLINOIS CIRCUIT CASE NO. 06CH37,<br>including all orders, bonds and record of<br>the case,<br>WAYNE YOUELL,<br>HENRY J. PAULSON, SECRETARY OF<br>THE TREASURY, UNITED STATES,<br>MICHAEL B. MUKASEY, ATTORNEY<br>GENERAL, UNITED STATES, ALIEN<br>PROPERTY CUSTODIAN<br><br>        Defendants | Adv. Pro. No. 08-50000 (KJC)<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Re: docket nos. 7, 8, 9 |

## MEMORANDUM

BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

On April 2, 2007, New Century Mortgage Corporation ("NCMC") and its affiliates (the "Debtors") filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy

33

Code.[1] On January 3, 2008, plaintiff Gary Forrest Edwards (the "Plaintiff" or "Edwards") commenced this adversary proceeding by filing a complaint entitled "Petition For Cancellation of Instruments, Fraudulent Transfer, Unjust Enrichment, Breach of Fiduciary Duty, Trespass, Civil RICO, Quiet Title, Injunctive Relief, Declaratory Relief and Damages" (docket no. 1) against NCMC and eight other defendants.[2] On January 28, 2008, Edwards filed an amended complaint (docket no. 5) (the "Amended Complaint").[3] The Amended Complaint contains a litany of requests for relief in connection with a state court mortgage foreclosure action, including cancellation of a promissory note and mortgage, damages for fraud, damages for violations of state and federal racketeering laws, declaratory judgment with respect to title to real property, and an injunction to prevent transfer of real property. In short, after foreclosure sale of his property, Edwards now challenges the validity of the debt giving rise to the foreclosure and the efficacy of the state court foreclosure proceeding.

Currently before the Court are the following motions to dismiss the Amended Complaint:

(i) Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) filed by Chase Home Finance, LLC ("Chase") (docket no. 7)(the "Chase Motion to Dismiss"),

(ii) Motion to Dismiss Adversary Complaint pursuant to Fed.R.Civ.P. 12(b)(1),

---

[1] By Order dated April 3, 2007, the Court granted the motion by New Century TRS Holdings, Inc. and its affiliates for joint administration of the related chapter 11 cases. (*See* main case docket no. 52). The Order was amended on August 8, 2007 to include Access Lending in the joint administration. (*See* main case docket no. 2199).

[2] The non-debtor defendants include LaSalle Bank, N.A., Chase Home Finance, LLC, Codilis and Associates, P.C., Rhonda Peek, the Circuit Court for the 8th Judicial Circuit of the State of Illinois, Wayne Youell, Henry J. Paulson, and Michael B. Mukasey.

[3] The Amended Complaint is entitled "Amended Petition for Cancellation of Instruments, Constructive Fraud, Fraudulent Transfer, Fraudulent Inducement, Fraud in Fact, Unjust Enrichment, Breach of Fiduciary Duty, Tresspass [sic], Civil RICO, Quiet Title, Injunctive Relief, Declaratory Relief and Damages."

12(b)(3) and 12(b)(6) filed by defendants Codilis & Associates, P.C. ("Codilis"), Rhonda Peek ("Peek") and Wayne Youell ("Youell") (docket no. 8)(the "Codilis Motion to Dismiss"),

(iii) Motion (I) to dismiss amended adversary complaint for (A) lack of subject matter jurisdiction or (B) failure to State a Claim, or in the alternative, Motion for Summary Judgement and (II) Joinder in all applicable arguments in the Motion to Dismiss Amended Adversary Complaint filed by Codilis & Associates, P.C., Rhonda Peeks and Wayne Youell Sheriff of Mason County, Illinois and Chase Home Finance's Motion to Dismiss (docket no. 9) filed by NCMC (the "NCMC Motion to Dismiss"),[4]

Edwards opposed the Motions to Dismiss by filing the "Combined Objection and Petition to Strike Defendant New Century's Motion to Dismiss and Defendant Chase Home Finance's Motion to Dismiss and Declaration of Monika McCarthy in support of Motion to Dismiss as presented under Joinder" (docket no. 14) ("Plaintiff's Response to the Motions to Dismiss"),[5] and an Affidavit of Truth In Support of Amended Adversarial Complaint (docket no. 15). Chase, NCMC, and Codilis each filed a reply to the Plaintiff's Response to the Motions to Dismiss (docket nos. 17, 18, and 19, respectively).

The Motions to Dismiss set forth two primary arguments for dismissal: first, that this Court does not have subject matter jurisdiction over this adversary proceeding pursuant to the *Rooker-Feldman* doctrine; and, second, that the Amended Complaint fails to state a claim upon which relief may be granted. For the reasons set forth below, I conclude that this Court lacks subject matter jurisdiction over this adversary proceeding, and, alternatively, that the Amended

---

[4] The Chase Motion to Dismiss, the Codilis Motion to Dismiss, and the NCMC Motion to Dismiss shall be referred to jointly herein as the "Motions to Dismiss." NCMC, Chase, Codilis, Peek and Youell shall be referred to jointly herein as the "Moving Defendants."

[5] In his response, Edwards claims that he did not receive notice of any motion to dismiss except NCMC's motion. However, he asserts that the Plaintiff's Response to the Motions to Dismiss addresses "any and all Motions to dismiss" jointly and all the Motions to Dismiss will be considered herein..

3

Complaint fails to state a claim. Therefore, the Motions to Dismiss will be granted.[6]

Factual Background.

On or about November 19, 2004, Edwards executed an Adjustable Rate Note in the principal amount of $70,500.00, made payable to NCMC (the "Note"). (*See* Ex. A to Amended Complaint). On the same date, in order to secure the obligations under the Note, Edwards executed a Mortgage placing a lien upon Edwards' real property located at 802 S. Washington Street, Manito, Illinois (the "Mortgage"). (*See* Ex. B to Amended Complaint).

On or about August 18, 2006, LaSalle Bank, N.A. ("LaSalle") filed a Complaint to Foreclose Mortgage (the "Foreclosure Action") against Edwards in the Circuit Court for the 8th Judicial Circuit, Mason County - Havana, Illinois (the "Illinois Court") alleging, *inter alia*, that Edwards had defaulted on his monthly payments secured by the Mortgage.[7] (*See* Ex.D attached to

---

[6] After the filing of Motions to Dismiss, Edwards filed a Motion for Judgment on the Pleadings or for Summary Judgment in the Alternative (docket no. 25) and a Verified Motion for Default Judgment Against Defendants LaSalle Bank, N.A., Circuit Court for the 8th Judicial Circuit of the State of Illinois, Henry J. Paulson, and Michael B. Mukasey (docket no. 30). Because the Motions to Dismiss are being granted, those motions need not be addressed.
The Motions to Dismiss will be granted as to all defendants, even though some defendants have neither filed a motion to dismiss nor joined the Motions to Dismiss. A court may dismiss a complaint as to non-moving defendants if those defendants are similarly situated and the plaintiff had ample opportunity to oppose the motion to dismiss. *Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc. - Pension Fund v. Canny*, 876 F.Supp. 14, 17 (N.D.N.Y. 1995); *Washington Petroleum and Supply Co. v. Girard Bank*, 629 F.Supp. 1224, 1230 (M.D.Pa. 1983). All defendants are similarly situated with respect to the motions to dismiss for lack of subject matter jurisdiction, and the plaintiff has had ample opportunity to respond to this argument. Moreover, "it is well-settled that 'even if a party does not make a formal motion to dismiss, the Court may on its own initiative dismiss the complaint for failure to state a claim upon which relief can be granted . . . where the inadequacy of the complaint is apparent as a matter of law.'" *Washington Petroleum*, 629 F.Supp. at 1230-31. The Amended Complaint fails to assert a plausible claim for relief against the non-moving defendants based upon a viable legal theory. It is, therefore, appropriate to dismiss the Amended Complaint as to all defendants.

[7] The NCMC Motion to Dismiss explains: "[O]n December 23, 2004, [the Debtors] sold the Mortgage to Lehman Brothers Bank, FSB ("Lehman"). [The Debtors] were designated interim servicer of the Mortgage on behalf of Lehman. LaSalle . . .served as trustee with respect to the securitization of the Mortgage." NCMC Motion to Dismiss, ¶ 5.

the Codilis Motion to Dismiss). Edwards filed a Motion to Strike the Complaint or for a More Definitive Statement dated September 29, 2006, and an Amended Motion to Strike the Complaint or for a More Definitive Statement dated October 11, 2006 (Edwards' Motions to Strike"). (*See* Ex. E to the Codilis Motion to Dismiss). On November 28, 2006, the Illinois Court denied Edwards' Motions to Strike. (*See* Ex. F attached to the Codilis Motion to Dismiss).

Edwards filed a Notice of Entry of Special Appearance with Answer to Complaint and Affirmative Defenses dated January 2, 2007 in the Foreclosure Action. (*See* Ex. G attached to the Codilis Motion to Dismiss). Edwards also filed an Amended Answer in the Foreclosure Action.[8] After engaging in discovery and various motions in connection therewith, the Illinois Court entered an Order dated May 30, 2007 (filed on June 1, 2007) that, *inter alia*, denied Edwards' oral motions contesting jurisdiction of the Illinois Court and venue in the Illinois Court, sustained LaSalle's objections to Edwards' discovery motions, and amended the Foreclosure Action complaint and all other pleadings to reflect LaSalle's proper name on the pleadings as "LaSalle Bank National Association, as Trustee of the Structured Asset Securities Corporation, 2005-NC1." (*See* Ex. H to the Codilis Motion to Dismiss).

In the meantime, LaSalle had moved for Summary Judgment in the Foreclosure Action, and Edwards filed a response opposing summary judgment. (*See* Ex. I and J attached to the Codilis Motion to Dismiss). On June 12, 2007, the Illinois Court entered an Order granting summary judgment in favor of LaSalle and striking the affirmative defenses raised by Edwards.

---

[8] In the Codilis Motion to Dismiss, Codilis asserts that the Amended Answer filed by Edwards was over 400 pages and, therefore, was not attached as an exhibit.

(*See* Ex. L attached to the Codilis Motion to Dismiss, and Ex. 3 to the Chase Motion to Dismiss). On the same date, the Illinois Court entered a Judgment For Foreclosure and Sale determining, *inter alia*, that LaSalle had a valid lien against the real property located at 802 S. Washington Street, Manito, Illinois in the amount of $80,156.41 (plus fees and costs), and ordering a Judicial Sale of the real property. (*See* Ex. M attached to the Codilis Motion to Dismiss, and Ex. 1 attached to the Chase Motion to Dismiss).

On September 25, 2007, the Sheriff of Mason County, Illinois (Youell) conducted a Judicial Sale of the real property, with LaSalle being the successful bidder at the sale. (*See* Ex. N attached to the Codilis Motion to Dismiss). Also on that date, an "Order Confirming Sale (Order Approving) and Order of Possession" was filed with the Illinois Court. (*Id.* and Ex. 4 attached to the Chase Motion to Dismiss). On October 29, 2007, a Sheriff's Deed dated September 25, 2007 was filed in the Recorder's Officer of Mason County, Illinois at Book 1107, Page 245, granting, transferring, and conveying to LaSalle the real estate commonly known as 802 S. Washington Avenue, Manito, IL 61546 (the "Real Property") (*See* Ex. 5 attached to the Chase Motion to Dismiss).

Fed.R.Civ.P. 12(b)(1) and the *Rooker-Feldman* Doctrine.

(1) Legal Standard - Fed.R.Civ.P. 12(b)(1).

The Moving Defendants move for dismissal of this adversary proceeding pursuant to Fed.R.Civ.P. 12(b)(1), made applicable hereto pursuant to Fed.R.Bankr.P. 7012, for lack of subject matter jurisdiction.[9] The Third Circuit Court of Appeals has explained that:

---

[9] In addition to a motion by a party pursuant to Fed.R.Civ.P. 12(b)(1), a court may also dismiss an action under Fed.R.Civ.P. 12(h)(3) if it determines that it lacks subject matter jurisdiction.

> A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff. In reviewing a factual attack, the court may consider evidence outside the pleadings.

*Gould Elec. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citations omitted). The Moving Defendants have treated their motion as a factual attack, and have asked the court to consider documents not specifically referenced in or attached to the Amended Complaint. The procedure for dismissal under Rule 12(b)(1) is quite different than that employed for dismissal under Rule 12(b)(6). *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

> [A]t issue in a factual 12(b)(1) motion is the trial court's jurisdiction . . . [and] there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Id.* Accordingly, in addition to considering the facts in the Amended Complaint, I will also consider the affidavits and documents supplied by the Moving Defendants.

(2) <u>Discussion</u>

All three Motions to Dismiss assert that this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine to consider the relief requested in the Amended Complaint.[10] The United States Court of Appeals for the Third Circuit has applied the *Rooker-Feldman* doctrine to bankruptcy courts, explaining:

---

[10] The *Rooker-Feldman* doctrine is derived from two United States Supreme Court decisions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

The *Rooker-Feldman* doctrine precludes lower federal courts "from exercising appellate jurisdiction over final state-court judgments" because such appellate jurisdiction rests solely with the United States Supreme Court. *See Lance v. Dennis*, 546 U.S. 459, 463, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006). We have held that this doctrine applies equally to federal bankruptcy courts. *See In re Knapper*, 407 F.3d 573, 582 (3d Cir. 2005).

The *Rooker-Feldman* doctrine is implicated when, "in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render that judgment ineffectual." *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996). Accordingly, a claim is barred by *Rooker-Feldman* under two circumstances: (1) "if the federal claim was actually litigated in state court prior to the filing of the federal action" or (2) "if the federal claim in inextricably intertwined with the state court adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong." *In re Knapper*, 407 F.3d at 580.

Moreover, a federal claim is "inextricably intertwined" with an issue adjudicated by a state court when (1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment. *Id.* at 581 (quoting *Walker v. Horn*, 385 F.3d 321, 330 (3d Cir. 2004)).

*Madera v. Ameriquest Mortgage Co. (In re Madera)*, 586 F.3d 228, 232 (3d Cir. 2009)

In *Madera*, a mortgage foreclosure default judgment was entered in state court against the plaintiffs. Thereafter, one of the *Madera* plaintiffs filed a chapter 13 petition in bankruptcy court and the plaintiffs instituted an adversary proceeding against the mortgagee, asserting that the mortgagee had failed to accurately disclose the terms of the mortgage loan under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, ("TILA"). Based on TILA, the *Madera* plaintiffs sought rescission of the mortgage loan, as well as damages. *Madera*, 586 F.3d at 230-31.

The Third Circuit Court upheld the decisions of the Bankruptcy Court and the District Court that the *Rooker-Feldman* doctrine precluded those courts from exercising jurisdiction over the *Madera* plaintiffs' rescission claim, because "that claim was inextricably intertwined with the [state court] foreclosure judgment." *Id.* at 232. The Bankruptcy and District Courts determined

8

that granting rescission would negate the foreclosure judgment. *Id.* The Third Circuit agreed, determining that "a favorable decision for the Maderas in the federal courts would prevent the Court of Common Pleas from enforcing its order to foreclose the mortgage." *Id.* See *also Faust v. Deutsche Bank Nat'l Trust Co. (In re Faust)*, 353 B.R. 94, 100 (Bankr.E.D.Pa. 2006) (holding that the bankruptcy court lacked jurisdiction under the *Rooker-Feldman* doctrine to hear a rescission claim brought under the Pennsylvania Unfair Trade Practices and Consumer Protection Law after entry of a judgment in a state court mortgage foreclosure action, because "rescinding the loan would negate the state court judgment.")

Similarly, in *Knapper*, the Third Circuit held that the bankruptcy court lacked jurisdiction under the *Rooker-Feldman* doctrine over a debtor's adversary proceeding, which challenged a state court foreclosure judgment on constitutional grounds. *Knapper v. Bankers Trust Co. (In re Knapper)*, 407 F.3d 573, 580-82 (3d Cir. 2005). The *Knapper* plaintiff argued that the state court judgment and resulting sheriffs' sale violated her due process rights because she was not properly served with the state court foreclosure complaint. *Id.* at 579. The Third Circuit held that her federal claim was "inextricably intertwined with the state court adjudication and thus barred by *Rooker-Feldman*" because the *Knapper* plaintiff could not "prevail on her federal claim without obtaining an order that 'would negate the state court[s'] judgment[s].'" *Id.* at 581.

The Supreme Court has decided that the *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Ind. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 1521-22, 161 L.Ed.2d 454 (2005). The relief sought by Edwards against the various

9

defendants in the Amended Complaint is a direct attack on the Illinois Court's summary judgment in favor of LaSalle and Judgment in Foreclosure and Sale.[11] The causes of action listed in the Amended Complaint include (i) claims for fraud against NCMC, Chase, and LaSalle based upon wrongful representations that they funded the mortgage loan, (ii) a request that this Court cancel the Note and Mortgage; (iii) a request to place the Property in a constructive trust based upon the "wrongful disposition" of the Property; and (iv) claims against the defendants for engaging in a "course of conduct which constitutes a criminal enterprise in violation of Federal and State Racketeering Statutes" because the defendants "regular[ly] engage in cooperative effort to deprive the public of property and cash under an elaborate scheme or artifice." Like the rescission claims in *Madera* and the constitutional challenge to the foreclosure judgment in *Knapper*, Edwards' claims are inextricably intertwined with the issues adjudicated by the Illinois State Court because granting the relief requested would negate the Illinois State Court judgments. The relief sought in the Amended Complaint based upon the above causes of action - - which includes a request for an injunction to prevent the defendants from transferring the Real Property, a declaration that Edwards is entitled to possession of the Property, a declaration that the Deed of Trust [Mortgage] and Note are null and void, damages based upon payments made under the Note, and declarations that the foreclosure sale be deemed null and void - - involve the issues considered and decided in the Foreclosure Action. The Amended Complaint seeks to undo those state court judgments. The claims in the Amended Complaint fall within the scope of the

---

[11] As one of the Moving Defendant pointed out, "[The] Plaintiff has gone so far as to actually name the Circuit Court for the 8th Judicial Circuit of the State of Illinois as a defendant in this adversary proceeding and to request that this Court undo the Foreclosure Action judgment." *See* Chase Motion to Dismiss, p. 7.

*Rooker-Feldman* doctrine.

Accordingly, I conclude that this Court lacks jurisdiction over the claims in Amended Complaint and the Motions to Dismiss pursuant to Fed.R.Civ.P. 12(b)(1) will be granted.

Fed.R.Civ.P. 12 (b)(6).

(1)    Legal Standard - Fed.R.Civ.P. 12(b)(6).

Alternatively, I will consider dismissal of the Amended Complaint under Fed.R.Civ.P. 12(b)(6) to the extent it may be argued that all of the Plaintiff's claims are not barred by the *Rooker-Feldman* doctrine. This rule, made applicable to this adversary proceeding by Fed.R.Bankr.P. 7012(b), governs a motion to dismiss for failing to state a claim upon which relief can be granted. "The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case." *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Anti-Trust Litig.)*, 496 F.Supp. 2d 404, 407 (D.Del. 2007) citing *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007) quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)(emphasis in original).

In *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009), the Third Circuit Court of Appeals considered recent Supreme Court decisions, including *Twombly, supra.,* and *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), and noted the shift from "simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." *Fowler*, 578 F.3d at 210. The Third

11

Circuit wrote:

> [W]hen presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - - but it has not 'shown[n]' - - 'that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler*, 578 F.3d at 210-11 (citations omitted).

The relevant record under consideration consists of the complaint and any "document integral or explicitly relied on in the complaint." *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002), citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

(2) Discussion

The Moving Defendants argue that the Amended Complaint does not set forth factual statements to support a cognizable cause of action.[12] The Amended Complaint sets forth many arguments and proposed legal conclusions, but few factual allegations. For example, much of Edwards' argument is grounded on the following assertions, contained in a section entitled "Background Facts:"

---

[12] Separately, Chase seeks to dismiss the Amended Complaint under Fed.R.Civ.P. 12(b)(6) by arguing that the claims are barred by *res judicata*, but because the complaint will be dismissed for the other reasons set forth herein, I need not decide whether dismissal on a third alternative ground is warranted.

> It is Petitioner's contention that the United States is and has been in a bankruptcy since at least 1933 and evidence of such can be found in the Congressional Record and the United States Code. As part of the "New Deal" the United States borrowed 33 million non-redeemable Federal Reserve Notes from the Federal Reserve and at that time a new form of currency entered into circulation in the system of commence.
>
> As a result today, as contained in numerous case decisions, a debt can no longer be discharged as a matter of law. Meaning, Federal Reserve Notes have no intrinsic value, and as such, are negotiable instruments under the negotiable instruments law and when used to, in the common vernacular, "pay" a debt it is like paying a $2 debt owed with a $2 I.O.U. The net result is that one ends up with $4 of debt and therefore, the debt is not paid but merely discharged as a matter of law. The original debt still exists but the nature of debt changes and is no longer collectible.
>
> As a matter of practice and usage the only functional currency in circulation and use today is non-redeemable Federal Reserve Notes. When Petitioner applied for a loan and was funded on the loan he understood and believed he was being loaned "money", meaning money of exchange, that was redeemable and had intrinsic value when in reality he was purchasing credit from the Federal Reserve through the lender in the form of Negotiable Instruments or specifically Federal Reserve Notes.

(Amended Complaint, p. 4). The few "facts" alleged in the Amended Complaint are those regarding Edwards' application for a loan and placement of the loan with NCMC. (Amended Complaint, p. 5). As discussed above, the Amended Complaint asserts causes of action for (i) fraud against NCMC, Chase, and LaSalle based upon wrongful representations that they funded the mortgage loan, (ii) cancellation of the Note and Mortgage; (iii) establishment of a constructive trust based upon the "wrongful disposition" of the Real Property; and (iv) damages based upon violations of federal and state racketeering laws. Each of these causes of action arise out of the above "Background Facts" and Edwards' assertion that NCMC did not lend "money," but only put up a small fraction (8%) of the total funds there were supposed to be loaned.[13]

---

[13] The Amended Complaint also appears to assert claims based upon Bankruptcy Code §707(b), §727(a)(4)(A) and (B), and §523 in separate sections of the Amended Complaint entitled "Allegations of Wrongdoing 11 U.S.C. §727(a) and 11 U.S.C. §707(b)" and "Cause of Action 11 U.S.C. §523." These

(Amended Complaint, at 4).

Faced with similar arguments in *Sneed v. Chase Home Finance, LLC*, 2007 WL 1851674 (S.D.Cal. June 27, 2007), the Court determined that such arguments are "legally frivolous," writing:

> It has long been established that Federal Reserve Notes are legal tender and that legal tender need not consist of silver or gold coin. *See generally Norman v. Baltimore & Ohio R. Co.*, 294 U.S. 240, 303, 55 S.Ct. 407, 414, 79 L.Ed. 885 (1935) (explaining the validity and effect of federal acts providing for the issuance of currency, and affirming the status of Federal Reserve notes and circulating notes of Federal Reserve banks and national banking associations as legal tender); *Foret v. Wilson*, 725 F.2d 254, 254-55 (5th Cir. 1984) ("[The] argument, that only gold and silver coin may be constituted legal tender by the United States, is hopeless and frivolous, having been rejected by the United States Supreme Court one hundred years ago.") (citing *Juilliard v. Greenman*, 110 U.S. 421, 4 S.Ct. 122, 28 L.Ed. 204 (1884)). Furthermore, it is equally well-established that checks and instruments redeemable for Federal Reserve notes have value. *United States v. Wangrud*, 533 F.2d 495, 495 (9th Cir. 1976) (affirming conviction of defendant who refused to pay taxes on the ground that he received checks, not money, and noting that the defendant's arguments had "absolutely no merit.").

*Sneed*, 2007 WL 1851674 at *3. Similarly, in *Rene v. Citibank NA*, 32 F.Supp.2d 539 (E.D.N.Y. 1999), the Court dismissed the plaintiffs' complaint, which claimed that the mortgagee attempted to issue "illegal tender" by providing the plaintiffs with a check, rather than "legal tender" in exchange for a note and mortgage. The *Rene* Court wrote:

> [T]he plaintiffs do not complain that they did not reap the benefits of using this check as a negotiable instrument. Nor do they complain of not being able to access actual "legal tender" by cashing the check. . . . Apparently, the plaintiffs have enjoyed the fruits of what [the bank's] check bought, yet they seek to nullify that check on the basis of a view that bank or mortgage company checks are worthless attempts to create illegal tender. Furthermore, it was only after they

---

claims also will be dismissed pursuant to Fed.R.Civ.P. 12(b)(6), since the Bankruptcy Code sections cited do not apply to a chapter 11 case (*see* 11 U.S.C. §103(b)), or apply only to cases involving individual debtors (*see* 11 U.S.C. §523(a)).

defaulted and foreclosure proceedings were completed, that plaintiffs came forward with their theory attacking the mortgage on this basis.

*Rene*, 32 F.Supp.2d at 544-45 (citations and internal quotations omitted). *See also Khangura v. American Mortgage Express*, 2009 WL 1604764, *2 (E.D. Cal. June 5, 2009) (The Court dismissed a complaint because the underlying claims, based on an assertion that the bank had failed to lend the plaintiff "real money," were "untenable, frivolous and must be rejected outright."); *Tuttle v. Chase Home Finance, LLC*, 2008 WL 4919263 (D.Utah Nov. 17, 2008) (The Court dismissed a complaint asserting that the mortgagee failed to lend valuable consideration to the plaintiffs because the plaintiff's theory and similar theories "have been dismissed by the courts as baseless and insufficient to withstand a motion to dismiss under Fed.R.Civ.P. 12(b)(6).").

Here, Edwards' claims depend upon his assertion that NCMC did not actually or fully fund the loan that he sought in exchange for the Note and Mortgage. Edwards, therefore, contends that the loan and all actions arising therefrom, including the Foreclosure Action and subsequent Sheriff's Sale, were fraudulent and in violation of his contract with NCMC. However, as discussed by the court in *Rene*, Edwards does not claim that he did not reap the benefits of this seemingly ordinary and usual loan transaction. For the same reasons as set forth in *Sneed, Rene, Khangura*, and *Tuttle*, the Amended Complaint fails to assert factual allegations showing that Edwards has a plausible claim for relief based upon a viable legal theory. Accordingly, the Amended Complaint will be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

Conclusion.

I conclude that the Amended Complaint should be dismissed under Fed.R.Civ.P. 12(b)(1) because this Court lacks jurisdiction to consider this adversary proceeding under the *Rooker-Feldman* doctrine, and, alternatively, under Fed.R.Civ.P. 12(b)(6) because the Amended Complaint is devoid of factual allegations showing that Edwards has a plausible claim for relief based upon a viable legal theory.

An appropriate Order will be entered.

BY THE COURT:

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: February 2, 2010